***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of Deputy Commissioner Taylor.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction over this matter.
2. All parties are bound by the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed at all times relevant herein.
4. Defendant was self-insured at all times relevant herein.
5. The parties stipulated into evidence the following at the hearing before Deputy Commissioner Taylor:
 a. Stipulated Exhibit 1, a packet of plaintiff's medical records
b. Stipulated Exhibit 2, Industrial Commission forms
c. Stipulated Exhibit 3, correspondence of the parties
6. The following exhibits were admitted into evidence at the hearing before Deputy Commissioner Taylor:
a. Defendant's Exhibit 1, January 1, 2002 surveillance report
b. Defendant's Exhibit 2, March 7, 2002 surveillance report
c. Defendant's Exhibit 3, disciplinary action report
7. Defendant accepted compensability for plaintiff's injury by filing a Form 21, Agreement for Compensation for Disability, approved by the Industrial Commission on October 25, 1994. Defendant paid plaintiff various periods of temporary total disability compensation following plaintiff's several surgeries.
8. The Form 21 admitted that plaintiff sustained a compensable injury by accident on September 15, 1994 resulting in lumbosacral strain and left knee contusions/strain. The agreement provided that plaintiff earned an average weekly wage of $464.96, yielding a compensation rate of $309.99. Defendant paid plaintiff compensation rate in accordance with the Form 21 until August 22, 2000.
9. The issues before the Commission are whether plaintiff is entitled to continuing disability compensation from August 22, 2000 forward and if defendant should be penalized 10% under N.C. Gen. Stat. §§ 97-18, 18.1 for failing to reinstate plaintiff's benefits after August 22, 2000.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Taylor, plaintiff was 50 years old and completed the twelfth grade.
2. In September 1979, plaintiff became employed with defendant as a sanitation engineer. Plaintiff collected residential trash and drove a sanitation vehicle. In April 1991, plaintiff injured his back and that injury is not the subject of this claim. Plaintiff again injured his back in an admittedly compensable injury on September 15, 1994. Since 1991, plaintiff has undergone six back surgeries. The last surgery performed on April 22, 1998 was a bilateral lumbar laminectomy with ray cage instrumentation.
3. Dr. William R. Brown with Carolina Microsurgical Association, plaintiff's treating physician, released plaintiff on February 1, 1999 to return to work with the following permanent restrictions: no bending, crawling, twisting, no overhead work, no lifting greater than ten pounds, limited standing and sitting without breaks for one hour, and no driving.
4. At the time of plaintiff's release by Dr. Brown, plaintiff was receiving temporary total disability compensation from defendant pursuant to the Form 21 approved by the Industrial Commission.
5. On March 9, 1999, defendant notified plaintiff that he had been selected to participate in a new Employee Training and Placement Program. In the program, plaintiff would receive his full salary as well as full benefits. Defendant asserted any failure to participate was a refusal of suitable employment and stated steps would be taken to terminate plaintiff's disability compensation. Plaintiff refused to participate in the program upon the advice of his counsel.
6. On March 19, 1999, defendant contacted plaintiff and stated that plaintiff must participate in the program and that plaintiff would receive a full day of pay if he completed a full day in the program. Defendant asserted that a vocational rehabilitation specialist would be available to those in the Job Link program, but declined to provide a name of or credentials for the rehabilitation professional. Defendant stated that a refusal to participate was a refusal of suitable employment and threatened to "take appropriate measures" to terminate compensation if plaintiff did not participate.
7. On March 22, 1999 plaintiff requested a job description, to have the first meeting with the vocational rehabilitation professional at his attorney's office, and clarification whether defendant made a job offer or scheduled vocational rehabilitation.
8. On March 24, 1999 defendant responded to plaintiff stating that plaintiff was offered a light duty job and that refusal to participate constituted refusal of suitable employment. Defendant again threatened to take steps to terminate plaintiff's disability benefits if he did not participate.
9. On May 17, 1999, defendant filed a Form 24, Application to Terminate Benefits, with the Industrial Commission. Following a hearing by telephone, Special Deputy Commissioner James C. Gillen entered a June 17, 1999 Order which denied defendant's application to terminate benefits. The Order found: "According to the documentation submitted, the new Winston-Salem program does not provide competitive employment but instead provides vocational rehabilitation . . . For as long as plaintiff claims entitlement to compensation, he is obligated to comply reasonably with vocational rehabilitation provided by defendant." Plaintiff was ordered to comply with medical and other treatment or rehabilitative procedures.
10. Defendant again demanded that plaintiff participate in the Employee Training and Placement Program by a letter dated June 18, 1999, stating defendant's purpose was to rehabilitate plaintiff for future employment. Defendant again stated that plaintiff's disability compensation would be terminated if he did not comply. The name of the program was subsequently changed to Job Link and plaintiff's participation was again characterized as light duty employment.
11. The Job Link program materials describe the program as a career planning, training and placement program where injured employees "learn while you earn." The program materials describe training classes, motivational sessions and job placement assistance.
12. Plaintiff began participating in the Job Link program on July 1, 1999. Plaintiff was paid his full weekly salary instead of his weekly compensation rate, receiving $10.43 per hour as well as full benefits.
13. Although plaintiff was paid his normal wage, his participation in the program was not competitive employment. Plaintiff did not perform any job duties and spent his time exclusively searching for employment.
14. Plaintiff was aided in developing a resume at Job Link and was referred to the Employment Security Commission personnel located in the Job Link building. The Employment Security Commission personnel routinely told plaintiff they did not have positions within plaintiff's restrictions and did not understand why he continued to seek positions through them.
15. Plaintiff was responsible for searching for jobs himself. He was not given job referrals by the Job Link personnel and was not provided a personal development plan.
16. Plaintiff testified that he spent most of his time from 8 a.m. to 5 p.m. sitting with two other men in the break room at the Job Link building. Plaintiff's job skills were never assessed, he was never assigned a rehabilitation professional, he never met with a rehabilitation professional and was never given the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims. Plaintiff was not given regular or appropriate job skills retraining to help him secure employment.
17. Plaintiff testified he had some daily contact with Rebecca McBride, a sanitation superintendent for defendant, who was the person who oversaw the Job Link program. Plaintiff testified the majority of his daily contact with Ms. McBride was her asking him each morning: "Mr. Clark, are you going to find a job today?" Ms. McBride testified that she was the person who ultimately recommended plaintiff be terminated for reasons defendant asserts were unrelated to plaintiff's disability.
18. Ms. McBride testified that plaintiff was frequently tardy during the course of plaintiff's participation in Job Link. She stated he was instructed on several occasions to note the actual time he arrived in the sign-in book and not the time he was supposed to arrive but plaintiff failed to follow these instructions. Plaintiff testified he complied with Job Link rules as he understood them and was looking for employment when he was not there. Plaintiff stated his absences were not questioned by Job Link employees.
19. Ms. McBride stated plaintiff falsified two documents which verified he had interviews with potential employers. Plaintiff freely admitted that he had placed the name of the person on the paper. In one instance plaintiff actually had interviewed with the individual and in the other had waited an hour to see the person before leaving without an interview.
20. According to Ms. McBride, on at least three occasions when plaintiff was asked by his supervisor at Job Link whether he had followed up with the Employment Security Commission's recommendations, he responded that he had not. Ms. McBride presented no testimony that she kept periodic reports on referrals and services provided plaintiff or had any communication with plaintiff's counsel to keep him informed of efforts made to assist plaintiff.
21. On August 22, 2000, plaintiff was terminated from the Job Link program and from his employment with the City of Winston-Salem for failure to participate in the Job Link program, for falsification of records, being absent from the work area without permission and for failing to follow instructions.
22. Defendant terminated plaintiff's salary on August 22, 2000 and did not reinstate plaintiff's temporary total disability compensation. Defendant terminated compensation without application to or order of the Industrial Commission.
23. On December 18, 19, 27, 2001 and February 22, 2001, plaintiff was observed by a private investigator hired by defendant driving and remaining in various locations for approximately seven or eight hours up to twelve hours.
24. On August 22, 2000, plaintiff was not competitively employed nor was he on light duty for rehabilitative employment. Although defendant elected to pay plaintiff his regular salary instead of his compensation rate, plaintiff was not engaged in competitive employment.
25. Although defendant characterizes plaintiff's participation in Job Link as employment, plaintiff was actually engaged in vocational rehabilitation. Thus, although defendant elected to call plaintiff's compensation a salary and to voluntarily pay more than plaintiff's compensation rate, plaintiff was in reality receiving temporary total disability compensation.
26. Therefore, when defendant unilaterally terminated plaintiff's compensation by terminating plaintiff's employment and participation in the Job Link program, defendant terminated plaintiff's temporary total disability compensation without authorization of the Industrial Commission.
27. The vocational rehabilitation which plaintiff received did not comply with the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in that no individualized plan was completed; a rehabilitation professional was not assigned; plaintiff was never given the Rehabilitation Rules; a rehabilitation professional did not meet with plaintiff at his attorney's office for the first meeting; a rehabilitation professional did not coordinate plaintiff's activities with plaintiff's counsel; no periodic reports on referrals and services provided plaintiff were kept; plaintiff was not referred only toward opportunities for suitable employment which had been evaluated against his restrictions; plaintiff was not provided job descriptions; and a qualified professional did not coordinate job search efforts for plaintiff.
28. The Full Commission finds the greater weight of the evidence shows that plaintiff was not placed in a qualifying vocational rehabilitation program and was not offered suitable employment through the Job Link program and therefore defendant could not suspend plaintiff's compensation benefits for any failure to cooperate with the Job Link program.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On September 15, 1994 plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has an ongoing presumption of disability based upon the Form 21 Agreement approved by the Commission on October 25, 1994. Kisiahv. W.R. Kisiah Plumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996), disc.review denied, 345 N.C. 343, 483 S.E.2d 169 (1997); Franklin v. BroyhillFurniture Industries, 123 N.C. App. 200, 472 S.E.2d 382, cert. denied,344 N.C. 629, 477 S.E.2d 39 (1996). After the presumption attaches, the burden shifts to defendant to come forward with evidence that plaintiff is employable by showing that the employee is capable of earning the same wages as before the injury or by showing the employeee's capacity to earn lesser wages than before the injury. Franklin v. Broyhill FurnitureIndustries, supra.
3. The Job Link program did not constitute suitable employment and the "job" which plaintiff held is not available in the competitive market.Saums v. Raleigh Community Hospital, 346 N.C. 760, 487 S.E.2d 798
(1997); Peoples v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798 (1986); Dixonv. City of Durham, 128 N.C. App. 501, 495 S.E.2d 380 (1998).
4. The vocational rehabilitation efforts offered by Job Link did not comply with the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims and defendant has not shown that plaintiff failed to comply with reasonable vocational rehabilitation efforts. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to total disability compensation from August 22, 2000 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. Defendant never sought permisssion from the Commission to terminate compensation pursuant to N.C. Gen. Stat. § 97-18(b) and Rule 404 of the North Carolina Workers' Compensation Rules. Therefore, plaintiff is entitled to have defendant pay a 10% late penalty on disability compensation past due from August 22, 2000 and accruing until defendant becomes current on disability owed plaintiff for unjustifiably terminating plaintiff's temporary total disability compensation. N.C. Gen. Stat. §§ 97-18, -18.1.
7. Plaintiff is entitled to medical treatment and expenses incurred or to be incurred as a result of the injury as may reasonably be required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
The foregoing stipulations, findings of fact and conclusions of law the Full Commission enters the following:
 AWARD
1. Defendant shall pay total disability compensation to plaintiff in the amount of $309.99 per week from August 22, 2000 and continuing until further Order of the Commission.
2. Defendant shall pay a 10% late penalty to plaintiff on the past due total disability compensation awarded in Paragraph 1.
3. A reasonable attorney's fee in the amount of 25% of the compensation awarded in Paragraphs 1 and 2 is hereby approved for plaintiff's counsel. Such fee shall be deducted from the compensation due plaintiff and paid by defendant directly to plaintiff's counsel.
4. Defendant shall pay all medical expenses incurred by plaintiff as a result of his compensable injury.
5. Defendant shall pay the costs.
This the ___ day of July 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/kjd