DEBORAH K. DIXON, EMPLOYEE, PLAINTIFF APPELLANT v. CITY OF DURHAM, SELF-INSURED EMPLOYER, DEFENDANT APPELLEE

No. COA96-1180

(Filed 3 February 1998)

**Workers' Compensation § 297 (NCI4th)— injury while police officer—offer of another position—same wage without income advancement—justified refusal—further disability compensation**

Plaintiff, who was injured while working as a city police officer II, was justified in refusing the city's offer of a water meter reader trainee position and thus was not barred by N.C.G.S. § 97-32 from receiving further disability compensation because the offered position was not "suitable" to plaintiff's earning capacity where plaintiff was offered the same salary as her police officer II salary but without a similar opportunity for income advancement, and there was no evidence that another employer would hire plaintiff for a similar position at a comparable wage level.

Appeal by plaintiff from Opinion and Award entered 29 May 1996 by the Full Industrial Commission. Heard in the Court of Appeals 17 November 1997.

Plaintiff began work as a police officer for the City of Durham in 1989. In April 1993, plaintiff was on duty as a police officer II when she responded to an emergency call. During the course of that assign-

ment, plaintiff suffered a serious cut by broken glass to her right wrist. After extended treatment, including surgery, physicians determined that plaintiff has a 20 percent permanent partial disability of her right hand. Because plaintiff's right hand is her dominant hand, she can no longer safely perform her duties as a police officer II: She cannot handle a gun safely and could not restrain suspects or otherwise adequately protect herself and others in the dangerous situations that are necessarily a part of the job of a police officer II.

Defendant notified plaintiff by letter 28 July 1994 that it was unable to place her in a position consistent with her physical limitations. Defendant gave plaintiff the options of resignation, medical disability retirement or termination due to inability to perform her job. Plaintiff chose medical disability retirement. At the time of her retirement, she had been earning an average weekly wage of $539.63.

After her retirement, plaintiff worked for another employer for a short time at an average weekly wage of $146.25. She left that job in fall 1994 to attend North Carolina State University, where she had been admitted to the School of Design.

In December 1994, defendant offered plaintiff a position as water meter-reader trainee at the same dollar salary as her police officer II salary, but without a similar opportunity for income advancement. Plaintiff rejected the position and sought compensation for her permanent partial disability.

Plaintiff's case was heard by a Deputy Commissioner of the North Carolina Industrial Commission. The Deputy Commissioner found in November 1995 that plaintiff's refusal to accept defendant's offer of employment as a water meter-reader trainee was unjustified and barred plaintiff, pursuant to N.C. Gen. Stat. § 97-32, from receiving additional disability compensation. Plaintiff appealed to the Full Commission.

The Full Commission declined to receive further evidence, made its own findings of fact and conclusions of law and entered an Opinion and Award in May 1996, upholding the Opinion and Award of the Deputy Commissioner. Plaintiff appeals.

*Edelstein and Payne, by M. Travis Payne, for the plaintiff appellant.*

*Brooks, Stevens & Pope, P.A., by Kathlyn C. Hobbs and Patricia Wilson Medynski, for defendant appellee.*

## DIXON v. CITY OF DURHAM

[128 N.C. App. 501 (1998)]

ARNOLD, Chief Judge.

"The findings of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there be evidence to support a contrary finding. However, the Commission's legal conclusions are reviewable by the appellate courts." *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982) (citations omitted).

When an injured employee seeks compensation under the Workers' Compensation Act, she must show that she was incapable after her injury of earning the same wages she had earned before the injury. *Id.*, 290 S.E.2d at 683. She may meet her burden in one of four ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C.App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted). Defendant argues forcefully that plaintiff failed to meet any one of the four means of proving disability set out in *Russell*. However, the Industrial Commission found as fact that plaintiff obtained post-injury employment at an average weekly wage of $146.25. Finding nothing in the record before us to undermine the Commission's finding, we conclude that plaintiff met her burden of proof under the fourth option set out in *Russell*.

Plaintiff assigns error to the Commission's conclusion of law that plaintiff's refusal of the water meter-reader trainee position was not justified under G.S. § 97-32 and that it barred her from receiving compensation for her permanent partial disability.

N.C. Gen. Stat. § 97-32 provides that "[i]f an injured employee refuses employment procured for him *suitable to his capacity* he shall not be entitled to any compensation at any time during the con-

tinuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." G.S. § 97-32 (1991) (emphasis added).

Plaintiff argues that the water meter-reader trainee position is not suitable to her physical limitations. Upon a thorough review of the record, we find competent evidence to support a conclusion that the job is within plaintiff's physical capacity. Thus, we do not disturb the commission's conclusion on that ground.

However, a review of case law shows that "suitability" under G.S. § 97-32 is not limited to a consideration of physical suitability. In *McLean v. Eaton Corp.*, 125 N.C. App. 391, 481 S.E.2d 289 (1997), this Court said the Industrial Commission must consider psychological disability as well as physical disability in determining whether a job offered to an injured employee "suitable to his capacity" under G.S. § 97-32. *McLean*, 125 N.C. App. at 394, 481 S.E.2d at 291. The similarity of the wages or salary of the pre-injury employment and the post-injury job offer also is among the factors considered. *See Blankley v. White Swan Uniform Rentals*, 107 N.C. App. 751, 755, 421 S.E.2d 603, 605 (1992), *disc. review denied, Blankley v. White Swan Uniform Rentals*, 333 N.C. 461, 427 S.E.2d 618 (1993) (where the Industrial Commission had listed amount of pay as a factor to be considered in determining whether an employee was justified in refusing an offered job).

In considering the wages or salary of a pre-injury job and a post-injury job offer, common sense and fairness dictate examination not only of the actual dollar amount paid at a given time, but also of the potential for advancement or, in other words, capacity for income growth. In this case, a job (water meter-reader trainee) with no potential for income growth for plaintiff is not sufficiently similar to a job (police officer II) with income-growth potential of approximately $8,000.

Defendant's risk manager, Laura Henderson, testified in this case that, typically, when a city employee is moved into a job at a higher salary than the job normally would pay, the employee gets no salary increases until the normal salary for the position "catches up," through city salary upgrades and cost-of-living increases, with the amount the employee is being paid. The salary for the water meter-reader trainee position offered to plaintiff ranges from an entry-level salary of $16,797.30 to a maximum of $24,285.56, assuming no promotions. In this case, plaintiff was making $30,118.92 as a police offi-

cer II. According to testimony by Ms. Henderson, if plaintiff accepted the water meter-reader trainee position, plaintiff would be paid $30,118.92, but could not expect a pay increase until the city increased the maximum salary for the water meter-reader trainee position from $24,285.56 to more than $30,118.92. In other words, Henderson testified, plaintiff would be frozen out of opportunities for pay increases that she might have received had she been able to keep her pre-injury job as a police officer. Even if plaintiff was promoted two levels from water meter-reader trainee to water meter reader II, she would have a job that topped out at $26,446.94 on the city's pay scale. She still would have no opportunity for income growth, regardless of job performance.

By contrast, if plaintiff had not been injured and had remained at the level of police officer II, with no promotion, she would have been eligible for salary increases up to $38,489.10. If she achieved two promotions to police sergeant (analogous to a two-level promotion to water meter reader II), she would have been eligible for salary increases up to $44,090.02. Clearly, plaintiff would have a substantially reduced earning capacity in the water meter-reader trainee job offered by the city. The post-injury job offered by defendant was not "suitable" to plaintiff's earning capacity under G.S. § 97-32.

This analysis is consistent with our Supreme Court's holding in *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798 (1986). The *Peoples* court interpreted earning capacity in the context of G.S. § 97-2(9), the Workers' Compensation Act statute that defines disability. *Peoples* held that "[p]roffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level." *Peoples*, 316 N.C. at 438, 342 S.E.2d at 806. "The rationale behind the competitive measure of earning capacity is apparent. If an employee has no ability to earn wages competitively, the employee will be left with no income should the employee's job be terminated." *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 764-5, 487 S.E.2d 746, 750 (1997), quoting *Peoples*, 316 N.C. at 438, 342 S.E.2d at 806. The record before this Court contains no evidence that another employer would hire plaintiff as a water meter reader at a salary of more than $30,000. To the contrary, witness Lisa Ward-Ross testified as an expert in vocational evaluation and rehabilitation that no entry-level water meter-reader jobs are available in the North Carolina job market at a salary of $30,000.

"A canon of statutory interpretation is that statutes dealing with the same subject matter must be construed together and harmonized, if possible, to give effect to each." *Peoples*, 316 N.C. at 444, 342 S.E.2d at 810.

The plain language of G.S. § 97-32 states that a post-injury job offered by an employer to the injured employee must be "suitable to his capacity." In determining what is "suitable," our courts consider similarity of the wages or salary of the pre-injury employment and the post-injury job offer. And *Peoples* requires that earning capacity be measured by whether other employers would hire the employee in the proffered job at a comparable wage level. *Peoples*, 316 N.C. at 438, 342 S.E.2d at 806.

The post-injury job offered by defendant is not "suitable" to plaintiff's capacity pursuant to G.S. § 97-32 and related statutes and case law. Plaintiff was justified in rejecting it.

Reversed and remanded for an Opinion and Award consistent with this opinion.

Reversed and remanded.

Judges GREENE and McGEE concur.