Upon review of all of the competent evidence of record with reference to the errors assigned, and finding good grounds to reconsider the evidence, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties and which are incorporated by reference and at the hearing as:
 STIPULATIONS
1. At all times relevant hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time of the incident giving rise to this case, an employer-employee relationship existed between the plaintiff and the defendant-employer.
3. The defendant-employer was self-insured with Frank Gates Service Company as its servicing agent.
4. The parties entered into a Form 21 Agreement, which was approved by the Industrial Commission on August 19, 1994. The Form 21 reflects the plaintiff's average weekly wage as $629.33.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was born November 13, 1952, in Rock Hill, South Carolina and remains a citizen and resident of that state and city. He has a high school education and almost all of his employment has required heavy manual labor. He was a fixer in a textile mill for ten years, lifting an average of 100 pounds regularly, 48 to 60 hours a week. Thereafter, he worked at Catawba Nuclear Plant for six years as a powerhouse mechanic, fabricating hangers for pipes and this was a very physical job. He was in construction work for five months prior to being hired at the defendant's tire manufacturing plant in Charlotte, NC, for nine years. His job was in the manufacturing of tires and he worked 40 hours a week constantly on his feet, moving about and being quite active.
2. On June 27, 1994, while working at one of the defendant's machines, an electrical conduit pipe suddenly fell from the ceiling area and struck plaintiff in the right knee causing an injury, which subsequently resulted in surgery. This was an accepted claim in which a Form 21 was duly filed by the parties and approved by the Industrial Commission on August 19, 1994.
3. The defendant employed Dorothy Hunt as a vocational consultant in this matter. As such, Ms. Hunt obtained from the plaintiff's treating physician, Dr. Roy Majors, a physical capacity form on May 10, 1995, which indicated that the patient could stand or walk during the work day from 0 to 2 hours, had a time limit of 30 to 60 minutes on vehicular travel to and from work and a lifting/carrying limitation on a frequent basis of 10 to 20 pounds and occasionally 30 pounds. Plaintiff could not balance, squat, kneel or crawl and could only occasionally bend or climb. With these restrictions, plaintiff was released to return to work on March 8, 1995. Thereafter, Dorothy Hunt carried out vocational rehabilitation in which she primarily provided the plaintiff with lists of jobs, most of which were not suitable for the plaintiff.
4. Plaintiff requested that Ms. Hunt assist him in returning to work for his employer or if that was not feasible, to find him a job close as practicable to his pre-injury wage. Ms. Hunt considered this to be unreasonable even though the plaintiff was in the Charlotte job market. She opined that only jobs that generated six to seven dollars per hour would be available to the plaintiff in light of his restrictions and work history. Plaintiff became frustrated and angry with Dorothy Hunt because of this and on several occasions Ms. Hunt terminated her vocational efforts. At the hearing, Dorothy Hunt, who testified for the defendant, could point to only two jobs that she felt were suitable and available to the plaintiff. The first job was described as a bench jeweler trainee at The Goldsmith. This was the only job during the fourteenth month period that Dorothy Hunt was providing vocational rehabilitation services that Ms. Hunt actually went on the interview with the plaintiff. Mr. Dillon, the jeweler who owned and operated The Goldsmith explained that the potential position was that of an apprentice or trainee and that he would be interested in training the plaintiff for the job if the plaintiff was interested in the job. However, Mr. Dillon could not pay him anything until the plaintiff proved to him that he was "good at the job" and had begun to earn "profits" for Mr. Dillon. Ms. Hunt testified that Mr. Dillon said that approximately after two months the plaintiff would probably start getting paid "on a piece work basis", and that he would reach full potential maybe in a year or two. However, the position was not yet available and would not become available until Mr. Dillon had obtained a second location. According to Ms. Hunt this was not expected until July of 1996. At the time of the hearing Ms. Hunt was not aware whether the second store had, in fact, been opened. No specific job offer was ever made by Mr. Dillon to the plaintiff. Ms. Hunt further testified that the defendant would continue to supplement the income of the plaintiff during the period of time that he was with The Goldsmith. The Commission does not find that this meets the definition of "suitable" employment. It is not indicative of the plaintiff's ability to earn any type of wage or income in the market place.
5. The only other job that the defendant points to as evidence that the plaintiff is no longer disabled and entitled to benefits under the provisions of N.C. Gen. Stat. § 97-29 is a third shift job with American Studios as a employee who processes film, cuts photographs, puts negatives in a computer and processes and bags the film. The plaintiff was to be paid $7 an hour. Plaintiff had the prospect of an increase of fifty cents an hour after three months. It was a forty-hour a week job. It was a job approved by Dr. Majors. This job was not offered to the plaintiff, however, because of statements the plaintiff made in the presence of the interviewer regarding his level of pain. The plaintiff's statements of pain are found to be credible in light of plaintiff's injuries and post-arthritic changes. It is noted that Ms. Hunt obtained the approval of Dr. Majors after
plaintiff had interviewed for the job and the American Studios had failed to offer the job to the plaintiff.
6. There has been no effort on the part of the defendant or defendants' vocational rehabilitation consultant to provide any actual trial return to work to the plaintiff.
7. Plaintiff's treating orthopaedic physician, Dr. Majors, as well as his own choice of physician, Dr. Avioli, agree that plaintiff is capable of returning to sedentary-light work. This limitation precludes plaintiff from returning to a job with the defendant, his employer, General Tire. While there is evidence that the plaintiff was less than enthusiastic about participating in job search, particularly for jobs that paid substantially less than his income at General Tire, the defendants never filed for a Form 24 order compelling the plaintiff to cooperate with vocational rehabilitation.
8. Plaintiff was also seen by Dr. John Long, a psychologist who diagnosed a major depressive order as a result of the pain being suffered by the plaintiff from his compensable injury. Plaintiff moved that such treatment be provided for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability, be ordered by the Commission as this treatment had been refused by the defendant.
9. The only evidence offered by the defendants that the plaintiff is capable of any type of wage earning was the apprenticeship or trainee position at The Goldsmith and the job with American Studios.
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Upon the execution of a Form 21 agreement and subsequent approval by the Commission, the employee enjoys a presumption of disability. Kisiah v. W.R. Kisiah Plumbing, Inc.,124 N.C. App. 72, 476 S.E.2d 434 (1996). In order to overcome this presumption the employer bears the burden of showing that the employee is no longer disabled. Moreover, the employee need not present evidence at the hearing unless and until the employer claiming that the plaintiff is capable of earning wages comes forward with evidence to show not only that suitable
jobs are available, but also that plaintiff is capable
of getting one taking into account both physical and vocational limitations. Kisiah v. W.R. Kisiah Plumbing, Inc., supra, citing Kennedy v. Duke Univ. Med. Center,101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990). The alleged job offers with The Goldsmith and American Studios were neither suitable jobs nor evidence that plaintiff was capable of earning the same wages he had earned before his injury in the same or other employment. Blankly v. White Swan Uniform Rentals,107 N.C. App. 751, 421 S.E.2d 603 (1992) disc. rev. den. 333 N.C. 461,427 S.E.2d 618 (1993) and Dixon v. City of Durham,128 N.C. App. 501, 495 S.E.2d 380 (1998).
2. While the defendant has failed to prove by the greater weight of the evidence that suitable employment was offered to the plaintiff, plaintiff is still obligated to cooperate with defendants' efforts towards providing suitable employment through reasonable vocational rehabilitation.
3. Plaintiff is also entitled to have the defendant provide all medical compensation reasonably necessary as a result of his injury by accident to the extent it tends to effect a cure, give relief or lessen his disability, including psychological or psychiatric treatment for his depression. N.C. Gen. Stat. §97-25; 97-2(19). Little v. Penn Ventilator Company,317 N.C. 206, 345 S.E.2d 204 (1986); Hyler v. GTE Prods.Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
4. Plaintiff is entitled to temporary total disability at the rate of $419.57 per week beginning June 27, 1994 and continuing until further orders of the Commission.
 ***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following:
 AWARD
1. Defendants shall pay the plaintiff temporary totally disability compensation at a rate of $419.57 per week beginning June 27, 1994 and continuing until further orders of the Commission. So much of such amount which has accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved in paragraph 2.
2. A reasonable attorney's fee of 25 percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from the sums due plaintiff and paid directly to counsel. Thereafter, defendants shall pay directly to plaintiff's counsel every fourth compensation check.
3. Defendant shall pay all medical expenses incurred or to be incurred in the future by plaintiff as a result of his compensable injury including any psychiatric or psychological treatment and medication for depression.
4. Plaintiff shall cooperate with defendant's efforts towards providing suitable employment through reasonable vocational rehabilitation.
5. Defendant shall pay the costs.
This the 9th day of February 1999.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ LAURA KRANIFELD MAVRETIC COMMISSIONER