An Opinion and Award for the Full Commission was initially filed 28 May 1999. Defendants thereafter filed a motion by letter, requesting a ruling on the issue of whether defendants were entitled to a credit for an overpayment. Upon review of the file, the undersigned discovered that the Opinion and Award filed 28 May 1999 failed to include a number of changes that should have been made in the final document. Accordingly, this Opinion and Award is filed to include a ruling on defendants' motion for a credit, and to correct errors and omissions that were not remedied before the previous Opinion and Award was presented for signing. The Opinion and Award filed 28 May 1999 is hereby VACATED. Plaintiff's motion for reconsideration is rendered moot and is DENIED.
***********
Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties of their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Royal Insurance Company was the carrier on risk.
4. On 30 April 1995, plaintiff was injured by accident during the course of his employment with defendant-employer.
5. Plaintiff received compensation at the rate of $301.35 from 1 May 1995 through 13 November 1995 and from 8 December 1995 through 12 November 1996.
6. A Form 24 was approved by the North Carolina Industrial Commission terminating compensation retroactive to 24 June 1996 based on plaintiff's unjustified refusal to attempt a physician approved position with the defendant-employer.
7. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1. These records consist of the following: five pages of documentation from Oweida Orthopedic Associates; two pages of documentation from Charlotte Radiology; eleven pages of documentation from Miller Orthopedic Clinic; five pages of documentation concerning the functional capacity evaluation dated 27 October 1995; five pages of documentation from Rehability Center.
***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-five years old and had a high school education. He had served eight years in the United States Marine Corp and worked for defendant-employer since 1989 as a concrete truck driver. Plaintiff's normal duties as a concrete truck driver included heavy physical exertion.
2. On 30 April 1995, plaintiff suffered an injury by accident when he strained his back while using a jackhammer to remove hardened concrete which had formed inside the drum of his truck.
3. Plaintiff's average weekly wage was $452.00 yielding a compensation rate of $301.35.
4. Plaintiff was initially treated by Russell T. Garland, M.D., for pain in his lower back. Dr. Garland instructed plaintiff to avoid heavy lifting and recommended that plaintiff attend physical therapy in order to aid his range of motion and back stabilization.
5. Following physical therapy, Dr. Garland placed plaintiff on light duty.
6. On 11 August 1995, an MRI of plaintiff's lumbar spine was performed to rule out the possibility of a herniated disc. No evidence of a herniated disc or nerve root compression was found. The MRI indicated congenial canal stenosis due to congenitally short pedicles with interfacetal hypertrophy at multiple levels. Dr. Garland determined that this condition was preexisting and not caused by plaintiff's injury by accident.
7. Dr. Garland referred plaintiff to Mark B. Hartman, M.D., with Miller Orthopedic Clinic.
8. In September 1995, a Functional Capacity Evaluation was performed to determine whether plaintiff was capable of working and, if so, what would be the appropriate working conditions. At the completion of the evaluation, Dr. Hartman indicated plaintiff was capable of medium level work with lifting limitations of 50 pounds occasionally and 20 to 25 pounds constantly, and standing for no longer than 20 minutes consecutively. Dr. Hartman further determined that plaintiff was unable to continue to do long term truck driving.
9. On or about January 1996, defendants employed John P. McGregor, with Vocational Rehabilitation Services, to provide vocational rehabilitation services to plaintiff. Mr. McGregor took a detailed medical and vocational history of plaintiff and outlined a work plan after considering plaintiff's return to work options as well as his qualifications, interests, and aptitudes. The record indicates that plaintiff was not motivated to find a job and that his job expectations were unrealistic.
10. In April 1996, Mr. McGregor met with Jim Schaar, defendant-employer's personnel manager. The purpose of the meeting was to discuss positions for which plaintiff might qualify. Mr. McGregor planned to submit a job description to the treating physician for approval.
11. In early May 1996, a job description as maintenance worker was prepared and submitted to Dr. Hartman for review. This was a new position with defendant-employer and was created in order to accommodate plaintiff's injury as well as to fill a need with the company. The job duties were duties that had been performed primarily by defendant-employer's truck drivers during any "down" time. However, defendant-employer needed such a position because the duties were necessary and the drivers did not have sufficient time to cover them. Other employers in the concrete supply industry would hire an employee to perform similar tasks at a comparable wage. Plaintiff was qualified for the proffered job, and none of the tasks were modified to fit plaintiff's condition or physical limitations.
12. On 13 June 1996, Dr. Hartman indicated that plaintiff could drive the 12 to 15 miles each way as required by the job description and approved the proposed job of maintenance worker as within plaintiff's restrictions. The Commission finds that the proffered maintenance position was within plaintiff's restrictions.
13. On 6 June 1996, Mr. McGregor and Mr. Schaar met with plaintiff and plaintiff's wife. The maintenance worker position was formally offered to plaintiff at $7.00 per hour and scheduled to begin on 24 June 1996. Plaintiff refused the position because he did not want to use his own car for travel to and from the job site. Plaintiff testified that he had no other objection to the job. Plaintiff's job as a truck driver paid approximately $11.00 per hour.
14. Plaintiff made no attempt to perform the maintenance position even though the employer would have reimbursed plaintiff for his mileage. Although the position paid less than plaintiff's pre-injury wages, plaintiff would have had opportunities for advancement within the company. Between the date plaintiff was offered the job and the date of the hearing before the Deputy Commissioner, defendant-employer had seventeen other job openings which would have involved promotions. Because of his qualifications and seniority, plaintiff likely would have obtained a promotion within the company. Plaintiff was not "locked into" a lesser salary, although none of these positions were yet approved by any physician.
15. On 20 September 1996, defendants filed a Form 24 Application to Terminate Compensation based upon plaintiff's unjustified refusal of the maintenance position. On 12 November 1996, the Commission approved the Form 24 Application, and compensation was terminated effective 24 June 1996.
16. Dr. Hartman last saw plaintiff on 18 July 1996, at which time plaintiff was instructed to follow up with Dr. Hartman as needed.
17. Earlier, on 8 November 1995, Dr. Hartman had assigned plaintiff a 5% permanent partial impairment for the back injury. Plaintiff had reached maximum medical improvement by 29 December 1995.
18. On 20 February 1997, Dr. Garland examined plaintiff. The x-rays revealed no abnormalities. Disc space heights were well maintained, with no spondylosis and no listhesis. The examination revealed plaintiff's motor strength to be normal at all levels. The sensory examination was normal. Ankle jerk reflexes, quadriceps reflexes, hip range of motion, knees, and distal pulses were all normal.
19. Dr. Garland reviewed a Functional Capacity Evaluation ordered by Dr. Hartman. Dr. Garland independently came to the same conclusion as did Dr. Hartman, that the proffered job was within the restrictions noted by the Functional Capacity Evaluation.
20. The proffered maintenance job demonstrates plaintiff's ability to compete with others for wages.
21. Defendants are due a credit or offset for compensation benefits paid for the period after 24 June 1996.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 30 April 1995, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant employer. Plaintiff received workers' compensation benefits from 30 April 1995 through 12 November 1996. G.S. §§ 97-2(6), 97-29.
2. Plaintiff unjustifiably refused a suitable job offered by defendants on 24 June 1996. Plaintiff's compensation was properly terminated effective 24 June 1996, to remain in effect during the continuance of plaintiff's unjustified refusal. G.S. § 97-32. Defendant rebutted the presumption of total disability by offering a suitable job within plaintiff's restrictions and thereby proving that plaintiff was partially disabled. G.S. § 97-30; Brown v. SN Communications, Inc., 124 N.C. App. 320, 330,477 S.E.2d 197, 202 (1996).
Plaintiff's reliance on Dixon v. City of Durham,128 N.C. App. 501, 495 S.E.2d 380, disc. review denied 348 N.C. 496 (1998), is misplaced. In Dixon, the plaintiff was offered a meter reader position at her former salary as a police officer, and she would not have been able to obtain a similar position with a similar salary with another employer. Although rate of pay is a factor to be considered in determining whether a job is "suitable," it is not necessarily a determining factor. The Act provides a remedy for partial wage loss. See G.S. § 97-30.
In addition, the proffered maintenance job did not constitute "make work." Rather, it had the indicia of a bona fide position that demonstrated plaintiff's ability to compete with others for wages.
3. As a result of his compensable injury on 30 April 1995, plaintiff is entitled to compensation for a 5% permanent partial disability rating to his back. G.S. § 97-31.
4. Plaintiff is entitled to temporary partial disability payments should he return to work at a position paying less than his pre-injury wages, as provided under the Act. G.S. § 97-30.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. For his permanent partial disability rating of 5% to his back, plaintiff is entitled to compensation for 15 weeks at a rate of $301.35. This amount shall be paid in lump sum, subject to an attorney's fee approved herein, and subject to a credit to defendants for the overpayment of benefits after 24 June 1996.
2. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel, to be paid as follows: 25% of the lump sum shall be deducted and paid directly to plaintiff's counsel.
3. Defendants shall pay the costs.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER