***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Phil Holmes, along with the briefs and arguments on appeal. The appealing parties have shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 20 July 2000 as:
 STIPULATIONS
1. Parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times.
3. That the employer-employee relationship existed on August 2, 1995.
4. That defendant employer is self insured for workers' compensation liability effective August 2, 1995 and that Gallagher Bassett Services is the claims administrator.
5. That plaintiff's average weekly wages were $495.95 and the compensation rate is $330.65.
6. That plaintiff was injured by accident or specific traumatic event arising out of and in the course of the employment on August 2, 1995.
7. Plaintiff has received compensation for temporary total disability pursuant to a Form 21 Agreement from November 24, 1995 to the present with credits for short-term disability payments as set out in Plaintiff's Exhibit 18.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff's back was injured while turning the crank on a carton machine on August 2, 1995. The injury resulted in disability beginning November 24, 1995.
2. Liability was admitted by Form 21 agreement and plaintiff began receiving compensation for incapacity to earn wages beginning November 24, 1995.
3. Plaintiff returned to light duty on August 2, 1996. She was transferred to her regular job and her back pain was aggravated to the point that she could not work beginning September 4, 1996.
4. On March 27, 1997, plaintiff was referred to Dr. Lapore for chronic pain management.
5. Dr. Lapore treated plaintiff's back injury from April 16, 1997 to June 11, 1998. He referred plaintiff to Victor Ng, M.D.
6. Dr. Ng treated plaintiff's back injury from June 23, 1998 to December 22, 1999. The diagnoses were chronic pain syndrome of the spine, anxiety, myofascial syndrome, left carpal tunnel syndrome and radiculopathy of the spine.
7. Medical case management was assigned to the claim by the workers' compensation administrator during February 1999. The case manager arranged for prescriptive medications by mail beginning July 1, 1999, an independent psychological examination by Dr. Schmickley, a functional capacity evaluation, and an independent medical evaluation by Dr. Sanitate.
8. On October 21, 1999, Dr. Boyette diagnosed nothing surgical in plaintiff. There was a lack of objective findings to coordinate with reported symptoms. Dr. Boyette recommended evaluation by a psychiatrist.
9. Plaintiff received acupuncture treatment. The acupuncture treatment reduced but did not eliminate plaintiff's pain.
10. Defendant-employer through counsel filed an application to terminate payment of compensation on April 5, 2001 alleging self-employment as a baby sitter based upon video surveillance and the affidavit of the claim's adjustor. The application to terminate payment of compensation was also supported by the reports of Dr. Boyette and Dr. Schmickley.
11. The Form 24 application to stop payment of compensation was withdrawn by counsel for defendants and a request for hearing was filed.
12. Plaintiff was evaluated by Gary Bachara, Ph.D. on August 15, 2001 on referral from the North Carolina Department of Health and Human Resources. Plaintiff presented with a history of back pain due to injury at work. Plaintiff was suffering from pain associated with both physical and psychological factors. The prognosis for her working was poor. Treatment at a pain clinic was recommended.
13. On September 18, 2001, plaintiff became a patient of Raymundo D. Millan, M.D. who is a physician specialized in pain management. He began treating her for chronic low back pain and myofascial pain syndrome.
14. On October 1, 2002, plaintiff reported to Dr. Millan that her pain was mostly in the low back radiating to the right lower extremity. She also was involved with aquatic therapy. Dr. Millan continued Neurontin 600 mg. three times a day, Celebrex 100 mg. b.i.d., aquatic therapy and stress management counseling.
15. William J. Albrecht, Ph.D. became plaintiff's treating psychologist on September 18, 2001.
16. When examined on September 18, 2001 by Dr. Albrecht, plaintiff gave a history of constant pain of varying intensities since 1995.
17. Dr. Albrecht has provided cognitive behavioral treatment for plaintiff since October 2, 2001.
18. Plaintiff has multiple musculoskeletal complaints involving chronic low back pain and myofacial syndrome of the low back; her physical complaints are in excess of what would be expected from the history, physical examination and laboratory findings; her symptoms have caused clinically significant distress and impairment of occupational functioning continuously since November 24, 1995; and, her symptoms are not intentionally produced or feigned.
19. The psychological diagnoses of plaintiff include undifferentiated somatoform disorder, general anxiety disorder and dysthymic disorder (depression that is persistent for more than two years), and dependent personality characteristics.
20. The greater weight of the evidence does not show that plaintiff's psychological problems were aggravated or caused by the August 2, 1995 injury at work.
21. Plaintiff perceives herself as being a disabled person secondary to low back pain that originated on August 2, 1995. However, plaintiff is capable of sedentary work with lifting restrictions of 15 pounds, despite plaintiff's contentions to the contrary.
22. Plaintiff has reached the point of maximum medical improvement as to her back condition. Vocational rehabilitation could prove fruitful.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Due to the compensable injury and plaintiff's ongoing disability, plaintiff is entitled to weekly compensation at a rate of $330.65 from August 2, 1995 and continuing. N.C. Gen. Stat. § 97-29.
2. Plaintiff's psychological condition is not related to the August 2 1995 and the plaintiff is not entitled to further treatment for the psychological aspect of her condition N.C. Gen. Stat. § 97-25.
3. Plaintiff is currently capable of sedentary work with a lifting restriction of 15 pounds. However, it has not been proven that any such job is currently available in plaintiff's geographical area that is otherwise suitable. Dixon v. City ofDurham, 128 N.C. App. 501, 495 SE 2d 380 (1998); Saums v. RaleighCommunity Hospital, 346 N.C. 760, 487 S.E.2d 746 (1997); Peoplesv. Cone Mills, 316 N.C. 426, 342 S.E.2d 798 (1986).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies the holding of the Deputy Commissioner and enters the following:
 ORDER
1. The defendants shall continue to pay to the plaintiff, subject to an approved attorney fee provided below, temporary total disability compensation of $330.65 per week and continuing until the plaintiff is employed or until further order of the Commission.
2. The plaintiff shall cooperate with any reasonable requests by the defendants to participate in vocational rehabilitation. Defendants shall provide vocational rehabilitation to plaintiff in accordance with the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims.
3. Twenty-five percent of the compensation due to plaintiff in paragraph one of this Opinion and Award is approved for her attorney fees. The defendants shall send every fourth compensation check to plaintiff's attorney beginning with the first check due to plaintiff subsequent to the filing of this Opinion and Award.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER