***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Harris.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed between Plaintiff and Defendant Employer at all relevant times.
3. Defendant Employer was self-insured for workers' compensation coverage at all relevant times.
4. Plaintiff's average weekly wage and compensation rate are $494.08 and $331.19 respectively.
5. Plaintiff injured her neck in the course and scope of employment on or about October 31, 2006.
6. Plaintiff was out of work from November 21, 2006 to October 8, 2007, and TTD compensation has been paid for that time.
7. Plaintiff has been out of work beginning October 15, 2007, continuing through the date of the hearing, and TTD compensation has not been paid.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Defendant's discovery responses
 • Exhibit 3: Industrial Commission Forms
 • Exhibit 4: Plaintiff's medical records
 • Exhibit 5: Plaintiff's personnel file documents
The following documents were accepted into evidence as Plaintiff's exhibits:
 • Exhibit 1: U-Scan Clerk Job Analysis
 • Exhibit 2: Medical bills *Page 3 
 • Exhibit 3: Medical bills
 • Exhibit 4: Letter from Michele Costa to Plaintiff dated 4/2/07
 • Exhibit 5: Letter from Plaintiff to Michele Costa dated 5/1/07
 • Exhibit 6: Letter from Plaintiff's counsel to Defendant's Counsel dated 5/8/07
 • Exhibit 7: Letter from Defendant's counsel to Plaintiff's Counsel dated 5/10/07
 • Exhibit 8: Letter from Defendant's counsel to Plaintiff's Counsel dated 6/6/07
 • Exhibit 9: Letter from BMS to Plaintiff dated 6/27/07
 • Exhibit 10: Letter from Michele Costa to Plaintiff dated 7/5/07 with copy of returned check
 • Exhibit 11: Letter from Michele Costa to Plaintiff dated 7/6/07 with copy of returned check
Transcripts of the depositions of the following were also received prior to the hearing before the Full Commission:
 • Dr. Laurence So (with Plaintiff's Exhibit 1)
 • Dr. Wesley Fowler (with Plaintiff's Exhibits 1-3)
 • Dr. Richard S. Broadhurst (with Plaintiff's Exhibits 1 2)
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. As of the date of the hearing, Plaintiff was 63 years old, with a date of birth of August 12, 1946. She lives in Robbinsville, North Carolina.
2. Plaintiff is right-handed.
3. Plaintiff had a 7th grade education until she went back to school to get a GED at age 56.
4. Plaintiff started working at Defendant Employer on November 26, 1996, making $4.75/hr as an associate in the Deli Department. Over time, Plaintiff worked up to the position of Deli Department Manager, making $12.50/hr in that job.
5. On October 31, 2006, Plaintiff was working for Defendant Employer as Deli Department Manager in its Robbinsville store. She had worked for Defendant Employer for 10 years.
6. Plaintiff's store manager, Terrance Crawford, described Plaintiff as an "excellent employee," highly respected, and a "wonderful person."
7. On October 31, 2006, Plaintiff injured her neck while catching a 30-pound box of cheese that she was removing from a shelf. She immediately experienced severe pain in her in her neck, radiating down into her left arm and hand. Defendant accepted this claim as compensable on a Form 60 dated March 1, 2007.
8. Plaintiff saw her family physician, Dr. Laurence So, on November 1, 2006, the day after her accident. Plaintiff complained of mid upper back pain, mostly on her left side to Dr. So during this visit. Dr. So ordered thoracic and cervical X-rays based on Plaintiff's pain complaints.
9. Dr. So's physician's assistant referred Plaintiff to Dr. Wesley Fowler, a neurosurgeon, for ongoing acute left arm pain and paresthesia on November 14, 2006. *Page 5 
10. Plaintiff first saw Dr. Fowler on November 21, 2006. In this initial conference, Plaintiff complained of pain from the neck through the length of her left arm into her left hand. Dr. Fowler recommended immediate surgical intervention and performed two (2) surgeries, a C5-6 foraminotomy on November 28, 2006, and a two-level fusion, from C5 to C7, on December 19, 2006.
11. Plaintiff continued to follow-up periodically with Dr. Fowler after the surgeries. In visits in January, February, and March 2007, Plaintiff's symptoms were stable, with improvement in her left arm pain post-surgery but residual numbness in her left index finger and thumb. A March 7, 2007, cervical MRI showed no continued nerve compression and no etiology for Plaintiff's continuing left upper extremity symptoms.
12. Dr. Fowler noted that while Plaintiff's neck, left shoulder, left arm, and left hand pain symptoms "kind of waxed and waned," they never completely resolved during his treatment of her. Dr. Fowler recommended Plaintiff go to pain management treatment to deal with her persistent pain problems. Dr. Fowler believes that Plaintiff's left side numbness will be permanent.
13. On January 24, 2007, Plaintiff began a multi-disciplinary work-hardening program at the Center for Occupational Rehabilitation (COR). As part of this program, she treated with Dr. Broadhurst, who oversaw her pain medication management.
14. On January 24, 2007, Dr. Broadhurst diagnosed Plaintiff with post-laminectomy syndrome, left-sided C6 radiculopathy, cervical degenerative joint disease, degenerative disc disease, and overall deconditioning. He prescribed Lyrica for pain and started her in the physical therapy portion of the work conditioning program.
15. On May 17, 2007, COR conducted a study of Plaintiff's work capacity concluding *Page 6 
that Plaintiff could perform in the light to light-medium range of work. Dr. Broadhurst approved work restrictions of limited lifting up to fifteen (15) pounds and overhead lifting limited to six (6) pounds, occasional overhead reaching only, and avoidance of ladder climbing, crawling, and kneeling. Frequent walking and standing were allowed.
16. Defendant Employer proffered a job description for a U-Scan position, and Dr. Broadhurst approved it on May 31, 2007, as being physically suitable for Plaintiff. Dr. Fowler agreed to let Plaintiff try this position, but was uncertain as to whether she would be able to continue the job in the long term.
17. The U-Scan position involved the employee acting as an attendant at the automated checkout in a grocery store. The customers did the actual scanning and bagging. The position was essentially sedentary in nature and involved only occasional reaching and lifting up to ten (10) pounds. The position could be performed while standing or sitting, as needed. The only routine keying was the input of codes for produce. Plaintiff's compensation for this job would start off at her pre-injury average weekly wage (AWW), but would likely be reduced to $11/hr after a three (3) month period if she remained in that position.
18. The U-Scan position was not a "suitable" employment job since the job would pay less money than the Deli Department Manager job she worked at when injured in her October 31, 2006, accident.
19. On May 31, 2007, Dr. Broadhurst deemed Plaintiff to have reached maximum medical improvement (MMI) for her compensable neck injury and assigned a ten percent (10%) permanent partial impairment (PPI) rating.
20. On June 9, 2007, while driving herself to visit her son in Florida, Plaintiff suffered a grand mal seizure while sitting in traffic in Dothan, Alabama. She sustained fractures *Page 7 
from L1 to L3 in her lumbar spine in the incident. After being released from the hospital on June 17, 2007, Plaintiff lived with her son in Florida for about two and a half (2½) months.
21. At some point between May 29, 2007, and June 19, 2007, Defendant Employer fired Plaintiff for exceeding the company's leave policy.
22. Based on the May 17, 2007, Center for Occupational Rehabilitation (COR) study, Dr. Fowler released Plaintiff to light duty work at her request on July 13, 2007.
23. Plaintiff saw Dr. So on August 30, 2007, and again on September 10, 2007, complaining of low back pain related to the Alabama incident. Dr. So continued to follow Plaintiff for her complaints of low back pain for several months thereafter.
24. Dr. Fowler also saw Plaintiff on September 24, 2007, at which time she declined his offer of further diagnostic studies of her neck condition because she did not feel her symptoms were severe enough to warrant them. Dr. Fowler thus released Plaintiff from treatment, to return as needed. At that time, Dr. Fowler felt that Plaintiff probably had a chronic pain issue in her left upper extremity secondary to some intrinsic nerve dysfunction. Dr. Fowler did not believe the Alabama seizure episode and L1 to L3 fractures significantly changed Plaintiff's neck condition and/or ongoing pain complaints and/or levels of pain.
25. On October 9, 2007, Plaintiff returned to work for Defendant Employer in the U-Scan position at the Robbinsville store. She continued to work in this position through October 15, 2007, when the pain levels in her left arm and fingers became extremely high and uncomfortable.
26. On October 16, 2007, Dr. So wrote Plaintiff out of work for "back pain." Plaintiff took this note to the store manager. Dr. So felt that Plaintiff was unable to work at this time due to increasing neck and upper extremity pain. *Page 8 
27. Defendant Employer filed a Form 28T on October 19, 2007, indicating that Plaintiff had made a successful and ongoing return to work effective October 10, 2007.
28. Plaintiff returned to Dr. Fowler on January 14, 2008, complaining of low back pain and left hip pain.
29. On January 30, 2008, Plaintiff again returned to Dr. Fowler with complaints of neck pain, left arm numbness and headaches. Dr. Fowler considered these symptoms to be similar to those Plaintiff had retained following the surgeries in late 2006.
30. Dr. So last examined Plaintiff for low back pain on May 14, 2008. He referred Plaintiff to an orthopedic surgeon for that problem.
31. On October 28, 2008, over a year after Plaintiff left the U-Scan position, Dr. So executed a Form 28U which stated that Plaintiff had "increased neck and upper extremity pain and numbness."
32. Plaintiff returned to Dr. Fowler on November 3, 2008, complaining of neck pain, left arm pain, and headaches. This time, Plaintiff indicated she wanted the further diagnostic studies that Dr. Fowler suggested, but when he declined her request to give her a PPI rating for her neck condition because he wanted to see up-to-date imaging first, she left his office and did not return.
33. As of the hearing before the Deputy Commissioner, Plaintiff was still having numbness in her left thumb and index finger. She is unable to lift these fingers consistently and "can't hardly stand to touch anything with them." Plaintiff also has pain in the left side of her neck and into her left shoulder and left arm, which she described as constantly aching at about a three out of ten on the pain scale.
34. Plaintiff takes at least three (3) Percocet a day for her neck and back pain. This *Page 9 
prescription medication significantly interferes with Plaintiff's ability to concentrate and focus.
35. Dr. Fowler agreed that Plaintiff has continued to have left upper extremity pain symptoms that have waxed and waned over time but "have never went totally away" since the surgeries.
36. Dr. Fowler confirmed that Plaintiff was medically unable to work until he released her to light duty on July 13, 2007. As to her work status beyond that date, he declined to comment without further diagnostic testing, examination and a possible functional capacity evaluation (FCE).
37. Dr. Fowler also could not say, without further evaluation, whether Plaintiff has reached maximum medical improvement (MMI) for her compensable neck condition.
38. Plaintiff has not reached MMI at this time since she has not received the comprehensive pain management, diagnostic testing, examination, and FCE suggested by Dr. Fowler.
39. Since leaving Defendant Employer in October 2007, Plaintiff has unsuccessfully looked for work at other retailers near her home.
40. Plaintiff's family has observed a significant negative change in her ability to perform activities of daily living since her October 31, 2006, injury by accident. Her niece, Debra Berry, noted that Plaintiff has lost a lot of use of her left arm and has regular sharp neck pain.
41. The medical treatment that Plaintiff has received for her compensable neck, arm, shoulder, hand, and back conditions has been reasonably required to effect a cure, provide relief and/or lessen her period of disability related to said condition. Further medical treatment is reasonably required to effect a cure and/or provide relief for her compensable neck, arm, *Page 10 
shoulder, hand, and back conditions.
42. Plaintiff has been unable to work at any job since her last unsuccessful work attempt on October 16, 2007, due to the compensable injuries resulting from the October 31, 2006, accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Since Defendant accepted the compensability of this claim on a Form 60, Plaintiff has the ongoing burden of proving that she remains disabled in order to be entitled to ongoing indemnity compensation. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 729, 542 S.E.2d 277 (2001).
2. Plaintiff was unable to perform the U-Scan position offered by Defendant Employer due to her compensable injuries suffered in the October 31, 2006, injury by accident. Plaintiff did not unreasonably refuse a suitable job as a U-Scan worker since she was unable to physically endure the position due to pain caused by compensable injuries from her October 31, 2006, injury by accident. Plaintiff did not unreasonable refuse a suitable job as a U-Scan worker as the position offered was not suitable employment based on the job's earning potential. See
N.C. Gen. Stat. §§ 97-32, 97-32.1, Dixon v. City of Durham,128 N.C. App. 501, 495 S.E.2d 380 (1998).
3. Plaintiff's work in the U-Scan position in October 2007 constituted a failed trial return to work per N.C. Gen. Stat. § 97-32.1. The U-Scan job attempt was an unsuccessful work attempt that should have prompted reinstatement of her temporary total disability (TTD) benefits *Page 11 
as of October 16, 2006. See N.C. Gen. Stat. § 97-32.1.
4. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, Plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v.Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, supra. Plaintiff has shown ongoing disability under Russell based on the medical evidence of Drs. So and Fowler and the lay testimony in the Record.Russell v. Lowes Product Distribution, supra.
5. Plaintiff is entitled to have Defendant pay for the medical treatment she has previously received for her compensable neck, left shoulder, left arm, left hand, and back conditions, with and/or at the direction of Drs. So, Broadhurst and/or Fowler, including but not limited to diagnostic testing, surgeries, prescriptions, physical therapy and/or mileage. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
6. Plaintiff is also entitled to have Defendant authorize and pay for her to receive *Page 12 
further medical treatment for her compensable neck, left shoulder, left arm, left hand, and back conditions, including but not limited to pain management if recommended. Id.
7. Because a question remains, pending further evaluation, as to whether Plaintiff has reached MMI for her compensable neck condition, an award for PPD is not authorized at this time. SeeEffingham v. Kroger Co.,149 N.C. App. 105, 561 S.E.2d 287 (2002).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Dr. Fowler is hereby designated as Plaintiff's treating physician, and Defendant shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that he recommends for Plaintiff's compensable neck, left shoulder, left arm, left hand, and back conditions, including but not limited to diagnostic testing, surgery, pain management, family physician care as well as any modalities suggested by these health care providers including referrals, physical therapy, functional capacity evaluation, prescriptions, and mileage.
2. To any extent they have not already done so, Defendant shall pay for the medical treatment Plaintiff has heretofore received for her compensable neck, left shoulder, left arm, left hand, and back conditions, with and/or at the direction of Dr. Fowler, including but not limited to diagnostic testing, surgeries, prescriptions, physical therapy and/or mileage.
3. Defendants shall pay to Plaintiff compensation for TTD at a rate of $331.19 per week from October 16, 2007, until further ORDER of the Commission. All accrued benefits shall be paid in a lump sum, subject to attorney's fees approved in this ORDER. *Page 13 
4. An attorney fee of twenty-five percent (25%) of the accrued back payment of TTD is approved for Plaintiff's attorney. Thereafter, every fourth (4th) TTD check shall be made payable and forwarded to Plaintiff's attorney until further ORDER of the Commission.
5. The Defendants shall pay the costs.
This the 30th day of March, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1