***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms, the Opinion and Award of Deputy Commissioner Ledford.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing as
 STIPULATIONS
1. The date of the injury which is the subject of this claim is September 18, 2009. *Page 2 
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
4. An Employee-Employer relationship existed between the Employee-Plaintiff and the Employer-Defendant.
5. On such date, the Employer-Defendant employed three or more employees.
6. Liberty Mutual Insurance Company is the carrier on the risk.
7. The claim was accepted pursuant to a Form 60 and Plaintiff has been paid temporary total disability compensation and medical compensation.
8. Defendants have paid Plaintiff compensation at the rate of $590.33 per week based upon an average weekly wage of $885.40.
 ***********
As set forth in the Pre-Trial Agreement and this Opinion and Award, the Commission addresses the following
 ISSUE
1. Whether the Defendant-employer offered Plaintiff suitable employment in April 2010?
2. If so, did Plaintiff unjustifiable refuse the same such that his ongoing compensation for total disability should be suspended?
 ***********
Based upon a preponderance of the evidence of record, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff is a forty-one year old man, with a birth date of December 23, 1969. He completed high school in Mexico. Plaintiff testified that he is a United States citizen. He has previously worked as a truck driver for other employers.
2. At the time of the admittedly compensable accident, Plaintiff worked as a truck driver for Defendant-Employer. Defendants' records and Plaintiff's testimony show that the truck driver position requires heavy lifting of up to 70 pounds as well as gripping of straps, buckles, bungee cords, pails, boxes, steering wheel and control levers.
3. On September 18, 2009, Plaintiff sustained an injury by accident to his left elbow when he was pulling dry wall through a window when his hand slipped and he felt a strain in the muscles of his left arm. Defendants accepted Plaintiff's left elbow injury as compensable and provided both indemnity and medical compensation benefits to Plaintiff.
4. Plaintiff was initially treated at Concentra. He provided a history that he continued to work full duty but was having problems performing his job. On examination, it was found that Plaintiff had tenderness to palpitation along his elbow. Plaintiff was diagnosed with an elbow and forearm contusion and provided medication to address his symptoms. Plaintiff was provided modified activities which would not allow him to climb a ladder or operate machinery with his left hand. Plaintiff was also referred to physical therapy.
5. Following his injury, Plaintiff continued to work light-duty for Defendant-employer. He was paid $13.00 per hour, and earned less per week than he was earning at the time of his injury by accident. The $13.00 per hour is the pre-injury base rate, which Plaintiff was guaranteed for his work. However, Plaintiff was able to earn more because he had a higher production rate for drywall delivery weight. *Page 4 
6. Due to his ongoing left elbow complaints, Plaintiff was referred to an orthopedic specialist. On November 4, 2009 Plaintiff was first examined by Dr. Andrew Jones. Upon his examination, Dr. Jones assessed Plaintiff with resolving lateral epicondylitis with signs and symptoms of radial tunnel syndrome. Dr. Jones initially treated Plaintiff with an injection, which provided pain relief.
7. Due to Plaintiff's ongoing problems with his elbow, Dr. Jones suggested surgery. On January 21, 2010, Dr. Jones performed nerve decompression surgery, without complication, on Plaintiff's left elbow to address his radial tunnel syndrome. During the surgery, Dr. Jones found that Plaintiff had a very damaged nerve. Post-surgery, Plaintiff was slow to heal and also developed shoulder pain. Dr. Jones has continued to see Plaintiff in follow-up.
8. Following the surgery, per his testimony, Dr. Jones restricted Plaintiff from any work until February 4, 2010. As shown by Dr. Jones' written work restrictions, from February 2, 2010 to March 1, 2010, Plaintiff was under significant work restrictions, including no prolonged use of his left arm, and Plaintiff was restricted from driving. As of February 23, 2010, Dr. Jones signed another work restriction note, in which Plaintiff was restricted from lifting over two pounds and was not allowed to drive commercial trucks.
9. There is no evidence that any suitable work was available with the Defendant-Employer or that any such work was offered to Plaintiff during February and March 2010. On or about April 1, 2010, Defendant-Employer contacted Plaintiff to offer him "modified/transitional work." This offer was conveyed in a letter dated April 1, 2010. The employer had put together some job tasks to create this transitional work and had submitted the same to Dr. Jones for approval. Dr. Jones approved these tasks as within Plaintiff's restrictions. *Page 5 
10. Plaintiff was required to pass a drug screen prior to returning to work, and was so advised on April 9, 2010. Plaintiff presented, completed the drug test, and passed the screening. After passing the drug test, the Employer expected that Plaintiff would report to light duty work on April 14, 2010.
11. Plaintiff did not return to work for the Employer. It was Plaintiff's perspective that the "transitional" job offered was not a real job but was "make work." Plaintiff's testimony, which is deemed credible in this regard, and other evidence of record shows that the job duties to be assigned were not part of an integrated job position but came from other positions.
12. The transitional job functions did not require heavy lifting or repetitive gripping. The physical requirements of the transitional job duties were within Plaintiff's restrictions. However, the Employer has not been able to identify any other individuals who had been offered the "transitional" position offered to Plaintiff. The Employer has not previously advertised to fill the position offered to Plaintiff.
13. The salary offered to Plaintiff was $13.00 per hour for 40 hours per week, which would generate $520.00 per week, significantly less than Plaintiff's prior average weekly wage, and even less than his compensation rate.
14. The position offered to Plaintiff in April 2010 was not a true job available within the marketplace or otherwise with the Employer. The duties had been pulled together from other jobs. The job also paid substantially less than Plaintiff's pre-injury wages.
15. Neither the testimony of Ronald Scott Barnes, the Branch Manager for the Employer, nor Eugene Mack, the Regional Manager for Defendant-Employer, shows that the position offered to Plaintiff was a real position available in competitive employment. Their *Page 6 
testimony confirms and it is found that these duties were transitional in nature, and would be classified as "make work."
16. Plaintiff continues to have left elbow pain. Per Dr. Jones opinion, it is unlikely that Plaintiff will regain totally normal function of his left arm. Plaintiff continues to have work restrictions. It is unlikely he could return to his prior job as a truck driver for Defendant-employer as that job involved heavy lifting, which he can no longer perform.
17. In Dr. Jones' opinion, Plaintiff has not reached maximum medical improvement. Dr. Jones recommends further physical therapy for Plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The transitional job offered to Plaintiff in April 2010 did not constitute suitable employment where the duties had been drawn from other positions and the job is not one which exists in the competitive marketplace and for which the employer would advertise for hiring. Saums v. Raleigh Community Hospital,346 N.C. 760, 487 S.E.2d 746 (1997); Peoples v. Cone MillsCorporation, 316 N.C. 426, 342 S.E.2d 798 (1986).
2. The transitional job offered to Plaintiff in April 2010 was not suitable in that it did not pay wages comparable to the wages Plaintiff was earning at the time of his injury by accident.Dixon v. City of Durham,128 N.C. App. 501, 495 S.E.2d 380 (1998).
3. Plaintiff did not unjustifiably refuse suitable employment, as the same was not offered by the Defendant-employer. Therefore, the Form 24 Application to suspend payment of compensation benefits was properly denied. N.C. Gen. Stat. § 97-32. *Page 7 
4. Plaintiff has not reached maximum medical improvement and is in need of further medical treatment as may be recommended by his treating physician. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to provide all medical treatment recommended by Plaintiff's authorized treating physician as may be reasonably necessary for his injuries sustained in the admittedly compensable injury by accident of September 18, 2009.
2. Defendants shall continue to pay Plaintiff compensation for temporary total disability at the rate of $590.33 per week until further Order of the Commission.
3. A reasonable attorney's fee of twenty-five percent of Plaintiff's ongoing temporary total disability compensation is approved for his attorney of record. Beginning with the filing of this Opinion and Award, every fourth check due Plaintiff shall be paid to his attorney.
4. Defendants shall pay the cost.
This the ___ day of October, 2011.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING: *Page 8 
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY L. McDONALD COMMISSIONER

 *Page 1