* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and *Page 2 
Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the alleged injury that is the subject of this claim is March 13, 2000.
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such date, an employer-employee relationship existed between defendant-employer and plaintiff.
4. On such date, defendant-employer employed three or more employees.
5. Defendant-employer is insured by Key Risk Insurance Company.
6. At the time of the injury, plaintiff's average weekly wage was $561.09.
7. Defendants accepted this claim on a Form 60 dated April 7, 2000.
8. On or about July 3, 2000, plaintiff returned to work in a light-duty capacity with defendant-employer and was paid $8.00 per hour.
9. Defendants contended that plaintiff had the capacity to earn $8.00 per hour in the competitive labor market and paid temporary partial disability benefits pursuant to N.C. Gen. Stat. § 97-30.
10. The parties disagree on whether plaintiff was fired or whether he quit, but plaintiff last worked for defendant-employer on or about August 10, 2002. *Page 3 
11. Defendant-carrier paid no further temporary partial disability beyond the date that plaintiff last worked for defendant-employer.
12. Upon recalculation of the average weekly wage, the parties agreed that plaintiff had been underpaid for temporary total and temporary partial disability through the date which plaintiff last worked for defendant-employer, and defendant-carrier has paid that arrearage in the amount of $16.94 temporary total disability and $8,047.39 temporary partial disability.
13. The following were entered into evidence by stipulation:
 a. The Pre-Trial Agreement, marked as stipulated exhibit 1;
 b. A surveillance video disc taken 28 August 2006 marked as stipulated exhibit 2;
 c. A written surveillance report from 28 August 2006 marked as stipulated exhibit 3;
 d. A surveillance video disc taken 11 September 2006 marked as stipulated exhibit 4;
 e. A written surveillance report from 11 September 2006 marked as stipulated exhibit 5;
 f. Plaintiff's medical records marked as stipulated exhibit 6; and
 g. The Form 28T filed in this matter dated 14 July 2000.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 4 
 FINDING OF FACTS
1. Plaintiff was 48 years old at the time of the hearing before the Deputy Commissioner. He attended school through the eighth grade and did not obtain a GED certificate. Plaintiff has not had any vocational or technical training, although he has gained a substantial amount of on-the-job knowledge about plumbing. Plaintiff was a plumber with defendant-employer for 17 years.
2. On March 13, 2000, plaintiff suffered a back injury when he picked up a pedestal lavatory bowl to set it up on its leg and felt a sudden onset of pain in his lower back. This injury arose out of and in the course of his employment, was a direct result of the work assigned, and occurred during a judiciably cognizable time period. Defendants admitted the compensability of this claim by filing a Form 60 on April 7, 2000.
3. Pursuant to Dr. Nitka's recommendations, plaintiff was out of work completely from March 27, 2000, until July 3, 2000. On July 3, 2000 plaintiff returned to work for defendant-employer. He informed defendant-employer about the restrictions given him by Dr. Nitka. These restrictions were articulated in Dr. Nitka's June 29, 2000 note and limited plaintiff to lifting no more than 25 pounds, restricted plaintiff to alternating sitting, standing, and walking, and allowed only occasional bending or stooping. Upon plaintiff's return to Dr. Nitka three weeks following plaintiff's return to work, the restrictions were modified by Dr. Nitka in a
June 27, 2000 note to no lifting over 10-15 pounds and no bending or stooping. Over the subsequent year, Dr. Nitka's notes reflected some minor modulation in the amount to be lifted and the extent of bending and stooping. The final restrictions given by Dr. Nitka, set forth in a May 23, 2001 note, placed plaintiff on light-duty indefinitely, stated no lifting over 25 pounds, no bending or stooping, and alternating sitting/standing/walking. *Page 5 
4. When plaintiff returned to work for defendant-employer on July 3, 2000, he was assigned to work in the warehouse as an assistant to Norman Talbot and classified as a "plumber's helper." This warehouse assistant job was not a position that was normally filled by defendant-employer. While Mr. Talbot had an assistant in the past, this position had been vacant for two years prior to plaintiff's filling it, and it was not filled after plaintiff left. Plaintiff's work assignments were ambiguous and irregular. His tasks included sweeping, cleaning the bathrooms, unloading supply trucks, and putting up stock. Defendant-employer produced no written job description. Because of plaintiff's physical limitations as a result of the March 13, 2000 injury, defendant-employer accommodated plaintiff and permitted him to spend large portions of the workday in a reclined position with his shoes and socks off.
5. Significant portions of plaintiff's work duties in the "plumber's helper" warehouse job exceeded the restrictions given to him by Dr. Nitka and several times per week plaintiff was asked to perform tasks that exceeded his restrictions. For instance, plaintiff was sent by defendant-employer to pick up 80-pound bags of sackcrete as well as heavy pieces of sheetrock.
6. In addition to working inside the warehouse, plaintiff was often sent to Lowe's or plumbing supply stores to pick up items necessary for defendant-employer's use on various jobs. Many times the weights of these items exceeded plaintiff's lifting restrictions. Defendant-employer's owner, Jimmy Wall, testified that he assumed that plaintiff had a cashier or someone help him lift these items. After plaintiff obtained items from the store, he was required by defendant-employer to deliver them to various worksites. Although purported by defendants to be a light-duty job, the warehouse assistant job given plaintiff violated the lifting restrictions imposed by Dr. Nitka. *Page 6 
7. Upon plaintiff's return to work in the "plumber's helper" warehouse job, defendant-employer paid plaintiff exactly 50% of his pre-injury hourly rate. Defendants offered the testimony of Etta Bridge, a bookkeeper for defendant-employer. Ms. Bridge testified that the company policy was to assess a 50% wage loss to light duty workers without regard to prevailing pay rates for plumber's helpers. The wages defendant-employer paid plaintiff to perform the warehouse "plumber's helper" job were not reflective of what other plumbing companies would pay plaintiff to do plumber's helper work.
8. On or about August 10, 2002, the employment relationship ended between defendant-employer and plaintiff. Just prior to that date, plaintiff had been temporarily filling a partial supervisory position following a supervisor's departure from defendant-employer. Plaintiff's severance from defendant-employer resulted from a disagreement regarding plaintiff's long-term position and work duties.
9. Following the severance from defendant-employer, plaintiff attempted to return to work for another plumbing company. Plaintiff was physically unable to perform the work and quit within a few months.
10. Kristen Fountain testified as an expert in the field of vocational rehabilitation. Plaintiff has little in the way of transferable skills, has limited education, and is physically incapable of performing any of the jobs in which he has previously been employed. Ms. Fountain testified that plaintiff would be unable to secure suitable employment because of plaintiff's physical condition, education, and transferable skills. While Ms. Fountain believed that it might be possible for plaintiff to obtain a position such as a parking lot attendant, these positions pay between $6.00 and $8.00 per hour and are, therefore, not suitable. *Page 7 
11. Given the limitations indicated by Dr. Nitka, taken with the duties required of plaintiff in the warehouse job, the warehouse "plumber's helper" job is beyond plaintiff's physical limitations due to his March 13, 2000 compensable injury and is not suitable.
12. In order to accommodate plaintiff's medical limitations, defendant-employer modified the warehouse "plumber's helper" position by allowing him frequent rest breaks and the opportunity to recline. This employment, as modified, is not available in the competitive employment market and is, therefore, not suitable.
13. The warehouse "plumber's helper" position plaintiff performed, even as modified for plaintiff with the addition of frequent rest breaks and the ability to recline, required him to complete duties that were beyond his medical restrictions. Accordingly, this job is not indicative of his wage earning capacity and does not constitute suitable employment.
14. The credible medical and vocational evidence of record shows that as a result of his March 13, 2000 injury that plaintiff has been unable to earn any wages in any employment from March 27, 2000, except for the wages earned in the modified warehouse "plumber's helper" job for defendant-employer and the wages earned when plaintiff unsuccessfully attempted to return to work for another plumbing company.
15. Plaintiff received temporary total disability benefits from defendants pursuant to a Form 60 as well as temporary partial disability benefits following the filing of a Form 28T upon plaintiff's return to work for defendant-employer. Defendants are entitled to a credit for these amounts. Defendants are also entitled to a credit for wages plaintiff earned subsequent to March 27, 2000. *Page 8 
16. The surveillance videos and reports entered into evidence do not appear to depict plaintiff engaged in any activity beyond his work restrictions. Furthermore, none of the actions depicted contradict any of plaintiff's statements or testimony.
17. Although plaintiff owned, maintained, and sold some rental properties subsequent to March 13, 2000, any earnings he received in these endeavors were not indicative of plaintiff's ability to earn wages in the competitive labor market.
18. Plaintiff's average weekly wage of $561.09 yields a weekly workers' compensation rate of $374.08.
19. Neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground.
20. Based on a review of the record, the Full Commission finds that it was proper for Deputy Commissioner Gillen to order defendants to pay to Kristen Fountain a reasonable expert witness fee in the amount of $400.00.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222,224, 374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337,378 S.E.2d 799 (1989). Under a specific traumatic incident theory, plaintiff is not required to prove that the injury arose from an unusual occurrence or *Page 9 
departure from ordinary duties. Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert. denied,339 N.C. 737,454 S.E.2d 650 (1995); Bradley v. E.B. Sportswear, Inc., 77 N.C. App. 450,335 S.E.2d 52 (1985).
2. On March 13, 2000, as plaintiff picked up a pedestal lavatory bowl to set it up on its leg, he felt a sudden onset of pain in his lower back and sustained a compensable injury to his back as a result of a specific traumatic incident of the work assigned that arose out of and in the course of his employment with defendant-employer during a judiciably cognizable time period. N.C. Gen. Stat. § 97-2(6).
3. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the March 13, 2000 compensable injury. N.C. Gen. Stat. §§ 97-25; 97-25.1.
4. Regarding plaintiff's return to work in the warehouse "plumber's helper" position and his unsuccessful attempt to return to work for the other plumbing company; an employer may rebut the presumption of continuing disability through evidence "that suitable jobs are available to the employee and that the employee is capable of getting one, taking into account the employee's physical and vocational limitations."Franklin v. Broyhill Furniture Industries, 123 N.C. App. 200, 206,472 S.E.2d 382, 386, cert. denied, 344 N.C. 629, 477 S.E.2d 39 (1996). "[M]ere proof of a return to work is insufficient to rebut the . . . presumption," because "capacity to earn is the benchmark test of disability." Kisiah v. W.R. Kisiah Plumbing, 124 N.C. App. 72, 81,476 S.E.2d 434, 439 (1996), disc. review denied,345 N.C. 343,483 S.E.2d 169 (1997). A "suitable" job is defined as one that the plaintiff is capable of performing considering his age, education, physical limitations, vocational skills, and experience. Burwell v.Winn-Dixie Raleigh, 114 N.C. App. 69, 441 S.E.2d 145 (1994). Given the foregoing, plaintiff's work as a warehouse *Page 10 
"plumber's helper" and his work for the other plumbing company did not constitute "suitable employment" sufficient to establish his capacity to earn competitive wages. Id.
5. Furthermore, pursuant to Dixon v. City of Durham,128 N.C. App. 501, 495 S.E. 2d 380, (1998), the suitability of a position is not limited to a consideration of physical suitability. The "potential for advancement or . . . capacity for income growth" as well as the "similarity of the wages or salary of the pre-injury employment and the post-injury job offer" must also be considered. The warehouse "plumber's helper" job and any possible parking-lot attendant jobs are not sufficiently similar in salary with plaintiff's pre-injury wages to comply with the requirements of Dixon, rendering the position unsuitable.
6. Plaintiff was justified in leaving the warehouse "plumber's helper" job in that the physical requirements of this position were not within his physical limitations. N.C. Gen. Stat. § 97-32; Oliver v. LaneCo., 143 N.C. App. 167 (2001).
7. Plaintiff was further justified in leaving the warehouse "plumber's helper" position in that this job, as modified, is not readily available in the competitive labor market. N.C. Gen. Stat. § 97-32; Saums v.Raleigh Community Hospital, 494 NC 96 (1997); Peoples v. Cone MillsCorp., 316 N.C. 426, 342 S.E.2d 798 (1986).
8. Given the credible medical and vocational evidence of record, and as a result of his compensable injury of March 13, 2000, plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $374.08 per week for the periods from March 27 2000, and continuing until plaintiff returns to work or further order of the Commission, subject to the credits owed for the temporary total and temporary partial disability benefits already paid, as well as for the credits owed for wages plaintiff received in his return to work with defendant-employer and in his unsuccessful attempt to return to work for the other plumbing *Page 11 
company. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distribution, 108 N.C. App. 762 (1993).
9. Defendants are entitled to a credit for the temporary total and temporary partial disability benefits paid plaintiff in this case. Defendants are also entitled to a credit for the wages plaintiff received during his post-injury work for defendant-employer and for the other plumbing company. N.C. Gen. Stat. § 97-42.
10. Plaintiff is obligated to comply with reasonable vocational rehabilitation procedures as directed by defendants. N.C. Gen. Stat. § 97-25.
11. Because neither party pursued any issue in this matter in an unreasonable manner or without reasonable ground, neither party is entitled to attorney's fees as a sanction. N.C. Gen. Stat. § 97-88.1.
12. Based on a review of the record, the Full Commission concludes that it was proper for Deputy Commissioner Gillen to order defendants to pay to Kristen Fountain a reasonable expert witness fee in the amount of $400.00. N.C. Gen. Stat. § 97-90.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Given the credible medical and vocational evidence of record, and his compensable injury of March 13, 2000, defendants shall pay plaintiff, subject to the attorney's fee approved below and the credits to which defendants are entitled, temporary total disability compensation at a rate of $374.08 per week for the period from March 27, 2000, and continuing until plaintiff *Page 12 
returns to work or further order of the Commission. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of the March 13, 2000 compensable injury, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel; thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
4. Plaintiff shall cooperate with reasonable vocational rehabilitation efforts as directed by defendants.
5. No attorney's fees under N.C. Gen. Stat. § 97-88.1 are appropriate to be awarded in this matter.
6. Defendants shall pay the costs, including the payment of a $400.00 expert witness fee to Kristen Fountain, if not paid by prior order.
This 10th day of December 2007.
 S/______________________
 CHRISTOPHER SCOTT
 COMMISSIONER
CONCURRING: *Page 13 
S/______________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________________ DANNY LEE McDONALD COMMISSIONER *Page 1