*********** *Page 2 
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms with some modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in the Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Commission has jurisdiction of the parties and of the subject matter.
3. All parties are properly joined, and there is no question as to misjoinder or nonjoinder of any party.
4. An employer-employee relationship existed between Plaintiff and Defendant on 27 January 2006.
5. The Phoenix Insurance Company insured Defendant on 27 January 2006.
6. Tara Williams sustained a compensable injury by accident on 27 January 2006.
7. Plaintiff's average weekly wage was $1,216.00.
8. The parties stipulated to the following documents:
 a. The Pre-Trial Agreement, marked as stipulated exhibit one (1);
 b. A collection of documents, including Industrial Commission Forms, medical records, and material related to the Form 24 Application in this case, collectively marked as stipulated exhibit two (2); *Page 3 
 c. Four (4) pages of Plaintiff's benefits history, marked as stipulated exhibit three (3).
 *********** ISSUES
1. To what benefits is Plaintiff entitled as a result of her 27 January 2006 compensable accident?
2. Was Plaintiff justified in her refusal of Defendant-Employer's post-injury employment offer?
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Deputy Commissioner on Defendants' 28 April 2006 Form 24 application to terminate or suspend compensation, alleging that Plaintiff refused to return to suitable employment offered by Defendant-Employer, and Plaintiff's 24 March 2006 Form 33 request for hearing, alleging that Defendants failed to pay temporary total disability compensation to Plaintiff during two (2) weeks in March 2006. At the time of the hearing, Plaintiff was 31 years old. She completed high school, as well as one (1) year of community college education. Plaintiff worked as an account executive for Defendant-Employer. Defendant-Employer produces automobile classified advertisement publications.
2. Plaintiff's duties as an account executive involved selling new advertising and servicing existing accounts. Plaintiff drove between 700 and 750 miles per week, driving to meetings with automobile dealership sales managers to discuss advertisements for a particular *Page 4 
week. After the meetings, Plaintiff would take pictures of the vehicles the sales managers wished to advertise. Plaintiff would move the vehicles occasionally. Plaintiff would end her field sales activities between 4:30 p.m. and 7:00 p.m., and then would return to Defendant-Employer's office to complete paperwork. It was not uncommon for Plaintiff to work 11 to 14 hours per day.
3. Plaintiff had to lift and carry various items with her as she performed her duties. Plaintiff carried containers of magazines with the automobile advertisements that she sold. The magazines weighed over 10 pounds per load. Plaintiff also carried books and paperwork for her job. Furthermore, she would carry articles such as keys, a camera, an electronic palm device, an electronic scanner, a briefcase, and paperwork. These items could weigh 15 pounds or more.
4. On 27 January 2006, Plaintiff suffered a compensable injury by accident when another vehicle struck her vehicle from behind as she was in the course and scope of her employment. She experienced neck and back pain, and went to the hospital in Sanford, North Carolina, where the medical staff diagnosed her with a lumbar strain/sprain. She was out of work as a result of this injury from 27 January 2006 until 31 January 2006. Thereafter, Defendants began sporadic payment of weekly temporary total disability compensation.
5. Plaintiff subsequently developed migraine headaches. Plaintiff did not have migraines headaches prior to the 27 January 2006 accident. As a result of her accident, as well as the related neck, back, and migraine headache pain, Plaintiff received primary care treatment and physical therapy. Plaintiff received orthopaedic treatment from Dr. Daniel James Albright, who diagnosed Plaintiff with cervical, thoracic, and lumbar whiplash syndrome, as well as with headaches. Dr. Albright released Plaintiff to return to light duty work beginning 27 February 2006 at two (2) hours per day, to be increased as tolerated. On 20 March 2006, Dr Albright *Page 5 
noted that Plaintiff could return to work at four (4) hours per day, as tolerated. He gave her a 20 pound lifting restriction, and "[f]urther restrictions per the neurologist treating Ms. Williams." At Plaintiff's 17 March 2006 medical visit with Dr. Albright, she complained of severe headaches, migraine headaches, and occipitocervical pain.
6. On 3 July 2006, Plaintiff returned to Dr. Albright. Dr. Albright's records from that visit indicate that Plaintiff was suffering from neck discomfort and migraine headaches. Dr. Albright testified that he would defer to Plaintiff's treating neurologist on questions regarding neurology, and agreed that Plaintiff should not work during the midst of a migraine headache.
7. Dr. Albright further testified that, in terms of physical restrictions, he would defer to the results of the work tests he ordered. The 7 September 2006 "Work Conditioning Re-evaluation/Discharge Report," compiled by Raleigh Orthopaedic Rehabilitation Specialists, and stipulated into evidence during Dr. Albright's deposition, indicates that Plaintiff had a 10 pound lifting restriction as of 7 September 2006.
8. Dr. Singaravelu Jagadeesan, a board certified neurologist, first saw Plaintiff on 23 February 2006. Plaintiff reported moderate to severe headaches twice a week, "associated with nausea, photophobia, phonophobia, and positional exaggeration lasting 24 hours." Dr. Jagadeesan ordered magnetic resonance imaging (M.R.I.) of the brain, prescribed medication, and wrote her out of work until the M.R.I. was done. On 9 March 2006, Dr. Jagadeesan noted that Plaintiff should remain out of work until further notice. On 22 March 2006, Plaintiff reported to Dr. Jagadeesan that she had headaches every day, and migraine headaches two (2) times per week. Dr. Jagadeesan released Plaintiff to light duty work as tolerated, but continued to treat her. Dr. Jagadeesan's 17 July 2006 note indicated that Plaintiff would be admitted to Rex Hospital on 18 July 2006 for a three (3) day testing protocol for her migraine headaches. In *Page 6 
his 11 September 2006 note, Dr. Jagadeesan diagnosed Plaintiff with "[p]osttraumatic headache, [c]hronic neck pain and altered mental status probably related to medication." He recommended that Plaintiff make an appointment with the Duke Headache Clinic.
9. Dr. Jagadeesan testified, and the Full Commission finds as fact, that the 27 January 2006 motor vehicle accident triggered Plaintiff's severe headaches and migraine headaches, and the treatment she received was necessary for conditions resulting from the 27 January 2006 motor vehicle accident. Dr. Jagadeesan further testified, and the Full Commission finds as fact, that Plaintiff is not able to work at all when she is experiencing a migraine headache. He further testified, however, that Plaintiff would not be restricted from working when she is not having a migraine headache.
10. As a result of the 27 January 2006 accident, Plaintiff suffered, and continues to suffer, two (2) to four (4) migraine headaches per week, which usually last all day. The migraine headaches leave Plaintiff exhausted the next day. Some of her medications leave her slow, lethargic, and unable to concentrate. Plaintiff also suffers from neck pain and severe headaches as a result of her compensable injury by accident. Plaintiff's testimony concerning the frequency and duration of her migraine headaches is found to be credible.
11. Plaintiff takes many medications due to the 27 January 2006 accident, including hydrocodone, Relpax, Topamax, Pamelor, Flexeril, Lorcet, and a medication for nausea.
12. On 27 March 2006, Plaintiff, through counsel, received Defendant-Employer's light-duty job offer. Defendant-Employer proposed that Plaintiff receive $350.00 in base rate compensation based on 20 hours worked, and 16 percent commission on any additional commissions generated during her light duty work schedule. *Page 7 
13. To accommodate Plaintiff's medical limitations, Defendant-Employer offered to modify her original job position by allowing Plaintiff to work only four (4) hours per day, and by allowing Plaintiff to have reduced lifting requirements. Michael Wiegand, Plaintiff's supervisor, testified that other employees would assist Plaintiff with her duties that involved lifting and carrying. The Full Commission finds that this employment offered to Plaintiff by Defendant-Employer, as modified, is not available in the competitive employment market and is, therefore, not suitable employment. Thus, Plaintiff's refusal of this position is justified.
14. The Full Commission further finds that Plaintiff's refusal is also justified because the physical requirements of the job, even as modified, are not within her physical limitations.
15. Based on the credible medical and vocational evidence of record, the Full Commission finds that as a result of Plaintiff's 27 January 2006 compensable injury, she is and continues to be unable to earn any wages from 28 January 2006 and continuing. Plaintiff is medically unable to return to her former job duties as an account executive for Defendant-Employer. The medical evidence establishes that Plaintiff is unable to work when experiencing a migraine headache. Her migraine headaches occur two (2) to four (4) times per week, last all day, and the day after her migraine headache, Plaintiff is exhausted. Also, the medications Plaintiff takes for her compensable condition leave her slow, lethargic, and with an inability to concentrate. Given the credible medical and vocational evidence of record, Plaintiff established that she is incapable of working four (4) or more days per week, due to migraine headaches and/or exhaustion from migraine headaches related to her compensable injury, and she cannot predict which days she would be incapable of working. Based on the greater weight of the evidence, even though she may be capable of some work, it would be futile for Plaintiff to seek employment at this time. *Page 8 
16. Plaintiff's stipulated average weekly wage at the time of the compensable accident, $1,216.00, results in a weekly compensation rate of $730.00, the maximum weekly benefit for an injury occurring in 2006.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 27 January 2006 Plaintiff sustained a compensable injury by accident that arose out of and in the course of her employment with Defendant-Employer when another vehicle struck the vehicle she was driving from behind as she was in the course and scope of her employment. N.C. Gen. Stat. § 97-2(6) (2007).
2. Plaintiff is medically unable to return to her former job duties as an account executive for Defendant-Employer. Given the credible medical and vocational evidence of record, Plaintiff established that she is incapable of working four (4) or more days per week due to migraine headaches or exhaustion from migraine headaches related to her compensable injury, and she cannot predict which days she would be incapable of working. Plaintiff also established that the medication she takes on a regular basis makes her slow, lethargic, and unable to concentrate. Based on the greater weight of the evidence, even though she may be capable of some work, it would be futile for Plaintiff to seek employment at this time. Russell v. Lowes Prod. Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. As a result of her compensable injury of 27 January 2006, Plaintiff is entitled to temporary total disability compensation, subject to a credit for benefits already paid, at the rate *Page 9 
of $730.00 per week for the period from 28 January 2005 and continuing until Plaintiff returns to work, or further order of the Full Commission. N.C. Gen. Stat. § 97-29 (2007).
4. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to have Defendants provide all medical treatment incurred or to be incurred which is necessitated by the 27 January 2006 compensable injury. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2007).
5. The burden rests on Defendants to show that the modified account executive job offered to Plaintiff is available in the competitive job market. Saums v. Raleigh Community Hospital, 346 N.C. 760,487 S.E.2d 746 (1997);Peoples v. Cone Mills, 316 N.C. 426, 342 S.E.2d 798 (1986). Defendants brought forward insufficient evidence to show that the account executive position, as modified for Plaintiff, is available in the competitive job market. Furthermore, the suitability of an offered position is not limited to a consideration of physical suitability.Dixon v. City of Durham, 128 N.C. App. 501, 495 S.E. 2d 380 (1998). The "similarity of the wages or salary of the pre-injury employment and the post-injury job offer" must also be considered. Id., 128 N.C. App. 501,506, 495 S.E.2d 380, 384. The position offered Plaintiff is not sufficiently similar in salary to comply with the requirements ofDixon. Given the circumstances of this case, Defendants have not met their burden to establish that the modified account executive position offered to Plaintiff was suitable employment that Plaintiff unjustifiably refused. N.C. Gen. Stat. § 97-32 (2007).
6. Further, Plaintiff is justified in refusing Defendant-Employer's job offer since the physical requirements of this position are not within her physical limitations, given her altered mental state due to her frequent migraine headaches and her medications. N.C. Gen. Stat. § 97-32 (2007); Oliver v. Lane Co., 143 N.C. App. 167 (2001). *Page 10 
6. Defendants are entitled to a credit for the temporary total disability benefits already paid to Plaintiff in this case. N.C. Gen. Stat. § 97-42 (2007).
7. Plaintiff's stipulated average weekly wage, $1,216.00, results in a weekly compensation rate of $730.00, the maximum weekly benefit for injuries occurring in 2006. N.C. Gen. Stat. § 97-29 (2007).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff, subject to the attorney's fee approved below, and to the credit owed for benefits already paid, temporary total disability compensation at a rate of $730.00 per week for the periods from 28 January 2006 and continuing until Plaintiff returns to work, or further order of the Full Commission. Payments already accrued shall be paid in a lump sum, subject to the attorney's fee approved, below.
2. Defendants shall pay all medical expenses resulting from the 27 January 2006 compensable injury, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
3. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff is approved for Plaintiff's counsel, and shall be deducted from Plaintiff's accrued compensation and paid directly to Plaintiff's counsel. Thereafter, every fourth (4th) check shall be paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs.
 This the __ day of May 2008. *Page 11 
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _______________________ DIANNE C. SELLERS COMMISSIONER
S/ _______________________ DANNY LEE McDONALD COMMISSIONER